**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RIMOWA GMBH, | |
| Plaintiff, | Case No. 21-cv-04865 |
| v. | |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

**COMPLAINT**

Plaintiff Rimowa GmbH ("Rimowa") hereby brings the present action against The Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Rimowa's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Rimowa substantial injury in the State of Illinois.

## II. INTRODUCTION

3.    This action has been filed by Rimowa to combat e-commerce store operators who trade upon Rimowa's reputation and goodwill by selling and/or offering for sale luggage and other travel accessories using infringing and counterfeit versions of Rimowa's federally registered trademarks (the "Counterfeit Rimowa Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Rimowa Products to unsuspecting consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Rimowa is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Rimowa Products over the Internet. Rimowa has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.      Rimowa is organized and existing under the laws of Germany with its principal place of business in Cologne, Germany.

5.      Rimowa is a world-famous, well-known manufacturer of cases made from aluminum and high-tech material polycarbonate.  Rimowa is famous for its luggage with the iconic groove design, which is to a large extent still produced in Germany.  With a history stretching back 120 years, to Rimowa, "Made in Germany" and "German Engineering" are synonymous with outstanding materials, brilliant technology and extraordinary product design, crafted to the highest possible quality.

6.      Rimowa is engaged in the manufacture, sale and distribution of the exceptional luggage, cases and travel accessories sold throughout the United States (collectively, the "Rimowa Products"), all of which prominently display its famous internationally-recognized and federally registered trademarks, including RIMOWA, RIMOWA, and the following three-dimensional trademarks for groove design products:



7.      The Rimowa trademark enjoys well-known trademark status in many jurisdictions of the world, *inter alia*, attested by the Taiwanese Trademark Office (TIPO) as well as by the KOREAN Trademark Office (KIPO).

8.     Rimowa launched the groove design as early as 1950 and since then, the groove design has been strongly associated with Rimowa Products.  The iconic design is also attested by the Design Museum London showing a Rimowa suitcase as part of its "Designer Maker User" collection.  Additionally, Forbes has called Rimowa's suitcase as "its iconic aluminum suitcase," and *designboom* magazine referred to Rimowa's "iconic aluminum design" and its "famously grooved design." **Exhibit 1** attached hereto are true and correct copies of these articles.

9.     Rimowa Products are distributed and sold to customers through retailers throughout the United States, including in its own operated Rimowa stores in prime locations (*e.g.,* Madison Avenue in New York, New York, Newbury Street in Boston, Massachusetts, the Miami DESIGN DESTRICT in Miami, Florida, etc.), pop-up stores in Beverly Hills, California and Aspen, Colorado, and in high-quality department stores such as Macy's, Barneys, Bloomingdale's, Nordstrom, Neiman Marcus, and Saks Fifth Avenue.  Rimowa is also known for its exceptional client care services.  In cooperation with select five-star hotels, such as the Ritz Carlton, The Four Seasons, the Mandarin Oriental, Rimowa offers consumers a free suitcase repair service up to their departure.

10.     Rimowa's 120-year history is characterized by an arduous quality standard, exceptional product design, technical innovations, and a unique, well-known trade dress.  Among the purchasing public, genuine Rimowa Products are instantly recognizable as such.

11.     Rimowa incorporates a variety of distinctive marks in the design of its various Rimowa Products.  As a result of its long-standing use, Rimowa owns common law trademark rights in its trademarks.  Rimowa has also registered its trademarks with the United States Patent and Trademark Office.  Rimowa Products typically include at least one of Rimowa's registered trademarks.  Often several Rimowa marks are displayed on a single product.  Rimowa uses its

trademarks in connection with the marketing of its Rimowa Products, including the following

marks which are collectively referred to as the "Rimowa Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE |
|---|---|---|
| 4,616,001 | RIMOWA | Oct. 7, 2014 |
| 5,784,670 | RIMOWA | Jun. 25, 2019 |
| 1,529,438 |  | Mar. 14, 1989 |
| 4,378,480 | CLASSIC FLIGHT | Aug. 6, 2013 |
| 4,742,508 | BOLERO | May 26, 2015 |
| 4,820,660 | BOSSA NOVA | Sep. 29, 2015 |
| 5,198,176 | RIMOWA ELECTRONIC TAG | May 9, 2017 |
| 4,434,656 | TOPAS | Nov. 19, 2013 |
| 4,548,851 |  | June 10, 2014 |
| 3,949,886 |  | Apr. 26, 2011 |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE |
|---|---|---|
| 4,586,888 |  | Aug. 19, 2014 |
| 4,722,151 |  | Apr. 21, 2015 |
| 5,784,671 |  | Jun. 25, 2019 |
| 5,924,342 |  | Dec. 3, 2019 |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE |
|---|---|---|
| 5,999,794 |  | Mar. 3, 2020 |

12.     The Rimowa Trademarks have been used exclusively and continuously in the U.S. by Rimowa, and have never been abandoned.  The above U.S. registrations for the Rimowa Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065.   Attached hereto as **Exhibit 2** are true and correct copies of the U.S. Registration Certificates for the Rimowa Trademarks included in the above table.   The registrations for the Rimowa Trademarks constitute *prima facie* evidence of their validity and of Rimowa's exclusive right to use the Rimowa Trademarks pursuant to 15 U.S.C. § 1057(b).

13.     The Rimowa Trademarks are exclusive to Rimowa, and are displayed extensively on Rimowa Products and in Rimowa's marketing and promotional materials.  Rimowa Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense.  In fact, Rimowa has expended millions of dollars annually in advertising, promoting and marketing featuring the Rimowa Trademarks. Because of these and other factors, the Rimowa name and the Rimowa Trademarks have become famous throughout the United States.

14.     The Rimowa Trademarks are distinctive when applied to the Rimowa Products, signifying to the purchaser that the products come from Rimowa and are manufactured to Rimowa's quality standards.  Whether Rimowa manufactures the products itself or licenses others to do so, Rimowa has ensured that products bearing its trademarks are manufactured to the highest quality standards.  The Rimowa Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks.  As such, the goodwill associated with the Rimowa Trademarks is of incalculable and inestimable value to Rimowa.

15.     Since at least as early as 1999, Rimowa has operated a website where it promotes Rimowa Products at Rimowa.com.  Rimowa Products are featured and described on the website and are available for purchase.  The Rimowa.com website features proprietary content, images, and designs exclusive to Rimowa.

16.     Rimowa has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Rimowa Trademarks.  As a result, products bearing the Rimowa Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Rimowa.  Rimowa is a multi-million-dollar operation, and Rimowa Products have become among the most popular of their kind in the world.

**The Defendants**

17.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar

sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

18.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Rimowa to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Rimowa will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

19.     The success of the Rimowa brand has resulted in significant counterfeiting of the Rimowa Trademarks. Consequently, Rimowa has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Rimowa has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Rimowa Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 3**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses,

9

resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

20. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186–187.

21. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Rimowa Products to residents of Illinois.

10

22.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Rimowa has not licensed or authorized Defendants to use any of the Rimowa Trademarks, and none of the Defendants are authorized retailers of genuine Rimowa Products.

23.     Many Defendants also deceive unknowing consumers by using the Rimowa Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Rimowa Products.  Other e-commerce stores operating under the Seller Aliases omit using the Rimowa Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Rimowa Products.

24.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms.   On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

25.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Rimowa Products.  Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Rimowa Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Rimowa Products were manufactured by and come from a common source and that Defendants are interrelated.

27.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Rimowa's enforcement

efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

29. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Rimowa Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the Rimowa Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Rimowa Products into the United States and Illinois over the Internet.

30. Defendants' unauthorized use of the Rimowa Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Rimowa Products, including the sale of Counterfeit Rimowa Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Rimowa.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

31. Rimowa hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Rimowa

Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Rimowa Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Rimowa Products offered, sold or marketed under the Rimowa Trademarks.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Rimowa Trademarks without Rimowa's permission.

34. Rimowa is the exclusive owner of the Rimowa Trademarks. Rimowa's United States Registrations for the Rimowa Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Rimowa's rights in the Rimowa Trademarks, and are willfully infringing and intentionally using counterfeits of the Rimowa Trademarks. Defendants' willful, intentional and unauthorized use of the Rimowa Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Rimowa Products among the general public.

35. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36. Rimowa has no adequate remedy at law, and if Defendants' actions are not enjoined, Rimowa will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Rimowa Trademarks.

37. The injuries and damages sustained by Rimowa have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Rimowa Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38.     Rimowa hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Rimowa Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Rimowa or the origin, sponsorship, or approval of Defendants' Counterfeit Rimowa Products by Rimowa.

40.     By using the Rimowa Trademarks in connection with the sale of Counterfeit Rimowa Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Rimowa Products.

41.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Rimowa Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42.     Rimowa has no adequate remedy at law and, if Defendants' actions are not enjoined, Rimowa will continue to suffer irreparable harm to its reputation and the goodwill of its Rimowa brand.

## PRAYER FOR RELIEF

WHEREFORE, Rimowa prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  using the Rimowa Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Rimowa Product or is not authorized by Rimowa to be sold in connection with the Rimowa Trademarks;

    b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Rimowa Product or any other product produced by Rimowa, that is not Rimowa's or not produced under the authorization, control, or supervision of Rimowa and approved by Rimowa for sale under the Rimowa Trademarks;

    c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Rimowa Products are those sold under the authorization, control or supervision of Rimowa, or are sponsored by, approved by, or otherwise connected with Rimowa;

    d.  further infringing the Rimowa Trademarks and damaging Rimowa's goodwill; and

    e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Rimowa, nor authorized by Rimowa to be sold or offered for sale, and which bear any of Rimowa's trademarks, including the Rimowa Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Rimowa's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall

disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Rimowa Trademarks;

3) That Defendants account for and pay to Rimowa all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Rimowa Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Rimowa be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Rimowa Trademarks;

5) That Rimowa be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 14th day of September 2021.      Respectfully submitted,


/s/ Justin R. Gaudio/
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Abby M. Neu
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
aneu@gbc.law

*Counsel for Plaintiff Rimowa GmbH*