DocuSign Envelope ID: B932A70C-0B90-4D54-846D-DBE05DDD72B3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RIMOWA GMBH, <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 21-cv-04865 <br><br> **Judge John Robert Blakey** <br><br> **Magistrate Judge Jeffrey T. Gilbert** |

**Declaration of Nicolas Lambert**

## DECLARATION OF NICOLAS LAMBERT

I, Nicolas Lambert, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I have been employed by LVMH Moët Hennessy Louis Vuitton SE, ("LVMH") in Paris, France since 2016 and I am duly empowered to represent Rimowa GmbH. ("Rimowa"). In my capacity as LVMH's Head of Online Markets Protection, I am responsible, in part, for Rimowa's trademark and anti-counterfeiting efforts in connection with Internet related matters. I am knowledgeable about or have access to business records concerning all information referenced herein, including, but not limited to, Rimowa's trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and anti-counterfeiting activities. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Rimowa is a world-famous, well-known manufacturer of cases made from aluminum and high-tech material polycarbonate. Rimowa is famous for its luggage with the iconic groove design, which is to a large extent still produced in Germany. With a history stretching back 120 years, to Rimowa, "Made in Germany" and "German Engineering" are synonymous with outstanding materials, brilliant technology and extraordinary product design, crafted to the highest possible quality. Rimowa is engaged in the manufacture, sale and distribution of the exceptional luggage, cases and travel accessories sold throughout the United States (collectively, the "Rimowa Products"), all of which prominently display its famous internationally-recognized and federally registered

trademarks, including RIMOWA, **RIMOWA**, and the following three-dimensional trademarks for groove design products:



4. The Rimowa trademark enjoys well-known trademark status in many jurisdictions of the world, inter alia, attested by the Taiwanese Trademark Office (TIPO) as well as by the KOREAN Trademark Office (KIPO).

5. Rimowa launched the groove design as early as 1950 and since then, the groove design has been strongly associated with Rimowa Products. The iconic design is also attested by the Design Museum London showing a Rimowa suitcase as part of its "Designer Maker User" collection. Additionally, Forbes has called Rimowa's suitcase as "its iconic aluminum suitcase," and *designboom* magazine referred to Rimowa's "iconic aluminum design" and its "famously grooved design." **Exhibit 1** attached hereto are true and correct copies of these articles.

6. Rimowa Products are distributed and sold to customers through retailers throughout the United States, including in its own operated Rimowa stores in prime locations (*e.g.*, Madison Avenue in New York, New York, Newbury Street in Boston, Massachusetts, the Miami DESIGN DESTRICT in Miami, Florida, etc.), pop-up stores in Beverly Hills, California and Aspen, Colorado, and in high-quality department stores such as Macy's, Barneys, Bloomingdale's, Nordstrom, Neiman Marcus, and Saks Fifth Avenue. Rimowa

is also known for its exceptional client care services. In cooperation with select five-star hotels, such as the Ritz Carlton, The Four Seasons, the Mandarin Oriental, Rimowa offers consumers a free suitcase repair service up to their departure.

7. Rimowa's 120-year history is characterized by an arduous quality standard, exceptional product design, technical innovations, and a unique, well-known trade dress. Among the purchasing public, genuine Rimowa Products are instantly recognizable as such.

8. Rimowa incorporates a variety of distinctive marks in the design of its various Rimowa Products. As a result of its long-standing use, Rimowa owns common law trademark rights in its trademarks. Rimowa has also registered its trademarks with the United States Patent and Trademark Office. Rimowa Products typically include at least one of Rimowa's registered trademarks. Often several Rimowa marks are displayed on a single product. Rimowa uses its trademarks in connection with the marketing of its Rimowa Products, including the following marks which are collectively referred to as the "Rimowa Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE |
|---|---|---|
| 4,616,001 | RIMOWA | Oct. 7, 2014 |
| 5,784,670 | RIMOWA | Jun. 25, 2019 |
| 1,529,438 | RIMOWA (logo) | Mar. 14, 1989 |
| 4,378,480 | CLASSIC FLIGHT | Aug. 6, 2013 |
| 4,742,508 | BOLERO | May 26, 2015 |
| 4,820,660 | BOSSA NOVA | Sep. 29, 2015 |
| 5,198,176 | RIMOWA ELECTRONIC TAG | May 9, 2017 |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE |
|---|---|---|
| 4,434,656 | TOPAS | Nov. 19, 2013 |
| 4,548,851 | *[suitcase outline design]* | June 10, 2014 |
| 3,949,886 | *[ribbed briefcase design]* | Apr. 26, 2011 |
| 4,586,888 | *[ribbed suitcase with wheels design]* | Aug. 19, 2014 |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE |
|---|---|---|
| 4,722,151 | (suitcase design) | Apr. 21, 2015 |
| 5,784,671 | (M monogram logo) | Jun. 25, 2019 |
| 5,924,342 | (M monogram logo) | Dec. 3, 2019 |

6

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE |
|---|---|---|
| 5,999,794 | (bellhop holding suitcase logo) | Mar. 3, 2020 |

9. The Rimowa Trademarks have been used exclusively and continuously in the U.S. by Rimowa, and have never been abandoned. The above U.S. registrations for the Rimowa Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as **Exhibit 2** are true and correct copies of the U.S. Registration Certificates for the Rimowa Trademarks included in the above table.

10. The Rimowa Trademarks are exclusive to Rimowa, and are displayed extensively on Rimowa Products and in Rimowa's marketing and promotional materials. Rimowa Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Rimowa has expended millions of dollars annually in advertising, promoting and marketing featuring the Rimowa Trademarks. Because of these and other factors, the Rimowa name and the Rimowa Trademarks have become famous throughout the United States.

11. The Rimowa Trademarks are distinctive when applied to the Rimowa Products, signifying to the purchaser that the products come from Rimowa and are manufactured to Rimowa's quality standards. Whether Rimowa manufactures the products itself or licenses others to

        do so, Rimowa has ensured that products bearing its trademarks are manufactured to the highest quality standards. The Rimowa Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Rimowa Trademarks is of incalculable and inestimable value to Rimowa.

12. Since at least as early as 1999, Rimowa has operated a website where it promotes Rimowa Products at Rimowa.com. Rimowa Products are featured and described on the website and are available for purchase. The Rimowa.com website features proprietary content, images, and designs exclusive to Rimowa.

13. Rimowa has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Rimowa Trademarks. As a result, products bearing the Rimowa Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Rimowa. Rimowa is a multi-million-dollar operation, and Rimowa Products have become among the most popular of their kind in the world.

14. The success of the Rimowa brand has resulted in significant counterfeiting of the Rimowa Trademarks. Consequently, Rimowa has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Rimowa has identified numerous fully interactive e-commerce stores, including those[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases"), which were offering for sale and/or selling unauthorized and unlicensed products, including luggage and other travel accessories, using infringing and counterfeit versions of the Rimowa Trademarks

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces.

(the "Counterfeit Rimowa Products") to consumers in this Judicial District and throughout the United States.

15. I perform, supervise, and/or direct investigations related to Internet-based infringement of the Rimowa Trademarks. Our investigation shows that Defendants are using the Seller Aliases to sell Counterfeit Rimowa Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Counterfeit Rimowa Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Counterfeit Rimowa Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business with Rimowa and do not have the right or authority to use the Rimowa Trademarks for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 3**.

16. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Rimowa Products to residents of Illinois.

17. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-

commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Rimowa has not licensed or authorized Defendants to use any of the Rimowa Trademarks, and none of the Defendants are authorized retailers of genuine Rimowa Products.

18. Many Defendants also deceive unknowing consumers by using the Rimowa Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Rimowa Products. Other e-commerce stores operating under the Seller Aliases omit using the Rimowa Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Rimowa Products.

19. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

20. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Rimowa Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to

conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Rimowa Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Rimowa Products were manufactured by and come from a common source and that Defendants are interrelated.

22. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Rimowa's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the

jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

24. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Rimowa Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the Rimowa Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Rimowa Products into the United States and Illinois over the Internet.

25. Monetary damages cannot adequately compensate Rimowa for ongoing infringement because monetary damages fail to address the loss of control of and damage to Rimowa's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Rimowa's reputation and the goodwill associated therewith by acts of infringement.

26. Rimowa's goodwill and reputation are irreparably damaged when the Rimowa Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Rimowa. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Rimowa's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

27. Rimowa is further irreparably harmed by the unauthorized use of the Rimowa Trademarks because counterfeiters take away Rimowa's ability to control the nature and quality of the Counterfeit Rimowa Products. Loss of quality control over goods offered for sale or sold under the Rimowa Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

28. The use of the Rimowa Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Rimowa is likely causing and will continue to cause consumer confusion, which weakens Rimowa's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Rimowa Products he or she has purchased originated from Rimowa will come to believe that Rimowa offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Rimowa Products, resulting in a loss or undermining of Rimowa's reputation and goodwill. Indeed, there is damage to Rimowa's reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who see inferior Counterfeit Rimowa Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Rimowa and the Rimowa Trademarks. Such post-sale confusion results in damage to Rimowa's reputation and correlates to a loss of unquantifiable future sales.

29. Rimowa is further irreparably damaged due to a loss of exclusivity. Rimowa Products are meant to be exclusive. Rimowa's extensive marketing and innovative designs are aimed at growing and sustaining sales. The Rimowa Trademarks are distinctive and signify to consumers that the products originate from Rimowa and are manufactured to Rimowa's

high quality standards. When counterfeiters use the Rimowa Trademarks to offer for sale or sell goods without Rimowa's authorization, the exclusivity of Rimowa's products, as well as Rimowa's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

30. Rimowa will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 13th day of September 2021 at Paris, France.

DocuSigned by:

*Nicolas Lambert*
A207A327B631495...

Nicolas Lambert